UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DE JESUS BAUTISTA VELASCO,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　Defendant. | Case No. 1:20-cv-1022-DAD-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 20) |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Jose De Jesus Bautista Velasco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence as a whole and is based upon proper legal standards. Accordingly, the Court will recommend that Plaintiff's motion for summary judgment be denied, the Commissioner's request to affirm the agency's determination to deny benefits be granted, and judgment be entered in favor of the Commissioner.

1

## FACTS AND PRIOR PROCEEDINGS

Plaintiff protectively filed an application for disability insurance benefits on August 17, 2017. AR 21, 188-89.[1] Plaintiff alleged he became disabled on May 25, 2027, due to myasthenia gravis. AR 215. Plaintiff's application was denied initially and on reconsideration. AR 91-95, 99-103. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Carol L. Boorady issued an order denying benefits on October 22, 2019. AR 15-34, 40-67. Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Relevant Hearing Testimony and Medical Record

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

On October 22, 2019, using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 21-34. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 25, 2017, the alleged onset date. AR 23. The ALJ identified the following severe impairment: myasthenia gravis. AR 23. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 24.

Based on a review the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except he could perform work requiring no climbing on ladders, ropes, or scaffolds and should avoid concentrated exposure to work hazards such as unprotected heights and being around dangerous moving machinery. He could perform work requiring only occasional use of fine vision: i.e., work up close and discrimination of small objects at a distance, and could perform work that did not require binocular vision. AR 24-32. With this RFC, the ALJ determined that Plaintiff was not capable of performing any past

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

relevant work.  AR 32.  However, there were other jobs in the national economy that he could perform, such as change house assistant, lab equipment cleaner, and counter supply worker.  AR 33-34.  The ALJ therefore concluded that Plaintiff had not been under a disability from May 25, 2017, through the date of the decision.  AR 34.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882

F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[2]

Plaintiff forwards three main arguments. First, Plaintiff argues that the ALJ erred by failing to apply the proper legal standard in assessing the severity of Plaintiff's degenerative joint disease of the knee at step two of the sequential evaluation, and by failing to consider the impact of this impairment on Plaintiff's RFC. (Doc. 20 at 8.) Second, Plaintiff argues that the ALJ erred by rejecting the opinions from Dr. Emmanuel Fabella and Dr. Vladimir Royter without setting forth specific, legitimate reasons for doing so. (*Id.* at 10.) Third, and finally, Plaintiff argues that the ALJ erred by failing to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and by failing to offer clear and convincing reasons for rejecting his subjective complaints. (*Id.* at 13.)

**A. Step Two – Severity**

At step two of the five-step sequential evaluation, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s)."), 404.1522. An impairment, or combination of impairments, can be found not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). For an impairment to be "severe" it must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522. "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v.*

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

4

1  *Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47

2  (1987). "It is not meant to identify the impairments that should be taken into account when

3  determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain

4  impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to

5  include an impairment at step two is harmless if the ALJ considered any limitations imposed by

6  the impairment in subsequent steps of the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909,

7  911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the

8  bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2

9  was harmless."); *Morrison v. O'Malley*, No. 1:22-CV-01559-SKO, 2024 WL 21558, at *6 (E.D.

10 Cal. Jan. 2, 2024) (explaining failure to include an impairment in the step two analysis is harmless

11 if the ALJ considers the functional limitations that flow from said impairment in subsequent steps

12 of sequential evaluation).

13       At step two of the sequential evaluation, the ALJ determined that Plaintiff suffered from

14 the severe impairment of myasthenia gravis. AR 23. At this step, the ALJ also considered

15 February 2019 x-rays of Plaintiff's right knee showing mild degenerative changes. However, the

16 ALJ determined that this condition was "not severe" because the medical evidence of record did

17 not establish "more than a minimal vocationally relevant limitation because the durational

18 requirements are not met." AR 23. In other words, the ALJ concluded that Plaintiff's right knee

19 impairment was not severe because it did not last long enough to satisfy the durational

20 requirement, i.e., an impairment must last or be expected to last for a continuous period of twelve

21 months or result in death. *See* 20 C.F.R. § 404.1509.

22       Plaintiff now argues that the ALJ failed to apply the proper legal standard in determining

23 that Plaintiff's right knee impairment did not meet the durational requirement. Plaintiff

24 acknowledges that as of the date of the ALJ's decision, Plaintiff's knee impairment had not yet

25 lasted for 12 months. Plaintiff contends, however, that this does not preclude the finding of a

26 severe impairment because at step two the ALJ must consider whether Plaintiff has an

27 impairment that has lasted *or is expected to last for a continuous period of at least 12 months*.

28 (Doc. 20 at 9, citing 20 C.F.R. §§ 404.1509; 404.1520(a).) Plaintiff contends that the ALJ failed

to consider whether his right knee impairment could be expected to last for at least 12 months. (*Id.* at 10.)

In an attempt to establish the durational requirement, Plaintiff argues that the record does not support that Plaintiff's degenerative joint disease had resolved or would resolve within 12 months of onset, given that the condition is degenerative. (Doc. 20 at 9.) Plaintiff also references his physical therapy records showing that he was only able to walk 10 minutes at a time, stand for 1 hour, along with clinical findings of weakness, fatigue, and balance issues. (*Id.* at 10.) Plaintiff points out that he was discharged from physical therapy because of transportation issues, not because his condition had improved or resolved. (*Id.* at 9-10.)

Plaintiff correctly notes that the cited physical therapy records reflect clinical findings of weakness and balance issues, and that he was discharged from physical therapy due to transportation issues. AR 542, 545. In contrast, those same records reflect that Plaintiff was independent in his activities of daily living, his x-ray was negative, he walked with a normal gait, he had functional range of motion, and had a fair to good prognosis. AR 543-45. Further, the planned duration of Plaintiff's physical therapy was for 8 weeks as of his June 2019 evaluation; that is, physical therapy was slated to end in or around August 2019. AR 546. At a minimum, this suggests that Plaintiff's disabling knee impairment was not expected to last for 12 continuous months from February 2019, the date of Plaintiff's x-rays and initial complaints of pain, through January 2020. It is Plaintiff's burden to establish a medically determinable impairment or a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *see also Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (9th Cir. 2020) ("At steps one through four, the claimant retains the burden of proof.").

Even if the ALJ erred at step two by finding Plaintiff's right knee impairment did not meet the durational requirement, any such error is harmless as the ALJ considered Plaintiff's knee impairment at subsequent steps of the sequential analysis. *Monique A. v. Colvin*, No. 23cv1981-LR, 2024 WL 5059153, at *10 (S.D. Cal. Dec. 10, 2024) ("If the ALJ errs at step two, but considers the claimant's impairments at the subsequent steps of the analysis, the error is harmless."). In this case, the ALJ proceeded past step two of the sequential evaluation and

6

considered Plaintiff's right knee impairment in the RFC analysis. When developing the RFC, the ALJ specifically considered the February 2019 x-rays of Plaintiff's right knee, which showed only "mild" degenerative changes. AR 28, citing AR 482. The ALJ also considered subsequent treatment records, which included Plaintiff's report in May 2019 that he was feeling better and only had mild pain (AR 500), examination findings in June 2019 that revealed full range of motion and normal gait (AR 493-94), and that Plaintiff was "independent in his activities of daily living,"(AR 490). AR 28. Additionally, the ALJ considered Plaintiff's complaints of knee pain, his referral for physical therapy to address that pain, and the physical therapist's determination that Plaintiff had full range of motion, though he lacked strength with knee extension and hip movement, but was considered to have a fair to good prognosis. AR 28, 483-85, 506, 503-05, 542-46. The ALJ determined that Plaintiff's treatment history and the objective medical evidence did not support a finding of additional limitations beyond those included in the RFC.[3] AR 32.

Given that the ALJ considered Plaintiff's right knee impairment and any impact that impairment would have when determining an appropriate RFC, the Court concludes that any error in failing to identify Plaintiff's right knee impairment as severe at step two is harmless. *See Kessler v. O'Malley*, No. 2:23-cv-01416 AC, 2024 WL 1908078, at *5 (E.D. Cal. May 1, 2024) (finding any error in failing to identify hip impairment as severe at step two to be harmless where ALJ considered the impact the impairment would have when determining an appropriate RFC and considered the recommendations by doctors, the testimony of plaintiff, and the medical records that pertained to the impairment and the impact it caused); *Teague v. Astrue*, No. CV 09-8848 JCG, 2010 WL 5094252, at *5 (C.D. Cal. Dec. 7, 2010) ("Second, even assuming the ALJ erred in overlooking to list prostatitis at step two, any error was harmless because the ALJ, in fact,

---

[3] The ALJ additionally evaluated the relevant medical opinions rendered in June 2019 from Dr. Carlos Bayardo and Dr. Vladimir Royter. AR 31-32, 473-76, 477-80. In rendering opinions regarding Plaintiff's RFC, neither Dr. Bayardo nor Dr. Royter identified or included a diagnosed right knee impairment. Rather, they limited their diagnoses to myasthenia gravis. AR 473-76, 477-80. While Dr. Bayardo mentioned "Leg pain" and "Leg weakness," it was not attributed to degenerative changes in Plaintiff's right knee. AR 473. Similarly, Dr. Royter referenced "weakness," and opined that Plaintiff required the use of an assistive device, but, like Dr. Bayardo, did not attribute these issues to degenerative changes in Plaintiff's right knee. AR 477-80.

considered Plaintiff's prostatitis while assessing his limitations," by noting "Plaintiff was 'treated for chronic prostatitis' and 'underwent a cystoscopy and bladder wash in September 2006[,]' ... [and by] further not[ing] that Plaintiff's 'symptoms included chronic pelvic discomfort, post void fullness and straining to urinate.'").

### B. Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred by rejecting the opinions from Dr. Fabella, an examining physician, and Dr. Royter, a treating physician, without setting forth specific, legitimate reasons for doing so. (Doc. 20 at 10-13.)

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 404.1520c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(3)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *Woods*, 32 F.4th at 792.

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. These standards of

articulation no longer apply in light of the new regulations. Thus, Plaintiff's argument that the ALJ failed to provide specific and legitimate reasons to reject the medical opinions of Dr. Fabella and Dr. Royter is no longer the standard. As explained by the Ninth Circuit in *Woods*:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* at 792. The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, id. § 404.1520c(b)(2)." *Id.*

<u>Dr. Fabella</u>

On October 31, 2017, Dr. Fabella completed a consultative medical evaluation. AR 422-27. Plaintiff reported that he saw "good for a little while after awakening," but had blurriness, double vision, and drooping eyelids most of the day. He also reported that his neurologist had started him on medications, with some improvement in his vision. He can walk well, but with his left eye closed, and he had no musculoskeletal complaints. AR 422. Plaintiff denied easy fatigability of any musculature, and reported no weakness, numbness, syncope, lightheadedness, headaches, or difficulty with coordination. AR 423.

On physical examination, Plaintiff was able to generate 75 pounds of force using the right hand, and 80 pounds of force using the left hand. Plaintiff's visual acuity without glasses was 20/70 both eyes, 20/70 right eye, and worse than 20/200 left eye. Plaintiff had normal gait and balance, and he did not require the use of an assistive device for ambulation. He could walk on

his toes and on his heels well. AR 424. His back range of motion was grossly within normal limits. He had no joint deformities, effusions, warmth, swelling, crepitus, or pain on motion in his extremities. His range of motion in the shoulders, elbows, wrists, hands, hips, knees, and ankles also was grossly within normal limits bilaterally. He had normal muscle bulk and tone without atrophy. AR 425.

Dr. Fabella indicated that Plaintiff had the following problems: Ocular myasthenia gravis with right ptosis, left lateral rectus palsy, double vision and ocular pain, responding inadequately to appropriate medications. AR 426. Dr. Fabella opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, limited due to blurred vision, could walk and stand for four hours or less out of eight-hour day secondary to blurred vision. He had no sitting restrictions. Dr. Fabella further opined that Plaintiff may benefit from the use of a left eye patch since he had to close his left eye to prevent eye strain. Plaintiff could climb, balance, kneel, or crawl occasionally secondary to blurred vision. He was unable to walk on uneven terrain, climb ladders, or work at heights secondary to blurred vision. He had no hearing limitation, but had blurred vision bilaterally. Plaintiff had no hand use or fine fingering manipulation impairments. Dr. Fabella additionally opined that driving or the operation of dangerous machinery was "best avoided due to blurred vision." AR 426.

In arguing that the ALJ erred, Plaintiff essentially argues that the ALJ failed "to state any specific, legitimate reason for rejecting Dr. Fabella's opinion." Doc. 20 at 12. As discussed above, this is not the relevant standard, and Plaintiff's argument thus fails.

Here, the ALJ considered Dr. Fabella's opinion and found it only partially persuasive. AR 30. In so doing, the ALJ appropriately evaluated the opinion's persuasiveness based on the relevant factors of supportability and consistency. *Id.* First, the ALJ indicated that the opined exertional limitations were not supported. *Id.* Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 404.1520c(c)(1). In finding the exertional limitations unsupported, the ALJ noted that Dr. Fabella's "exam report . . . pointed out the claimant had no musculoskeletal complaints at that time." AR 30. Further, the ALJ considered that other than prominent right ptosis and

impaired extraocular movements with left lateral rectus palsy, Dr. Fabella's examination of Plaintiff was "otherwise normal," and "[i]n fact, [Plaintiff] had a normal gait and balance without any assistive devices and he could walk on his toes and heels well." AR 27. Additionally, Plaintiff denied neurologic symptoms, such as weakness, and had no headaches or difficulty with coordination. AR 26. The ALJ also found it notable that Plaintiff was able to generate 75 pounds of force with the right hand and 80 pounds of force with the left hand. AR 27, 424. Given Plaintiff's lack of musculoskeletal complaints and otherwise normal physical examination findings with the exception of prominent right ptosis and impaired extraocular movements with left lateral rectus palsy, the ALJ could properly conclude that Dr. Fabella's opined exertional limitations were unsupported.

Second, the ALJ determined that Dr. Fabella's opined exertional limitations were not consistent with the overall evidence. AR 30. Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). While the ALJ does not expand on this explanation, the Court may draw specific and legitimate inferences from the ALJ's opinion to determine whether it is supported by substantial evidence, "if those inferences are there to be drawn." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1193 (concluding that a court will uphold the Commissioner's findings if they are, "supported by inferences reasonably drawn from the record"). The ALJ expressly determined that while Plaintiff asserted his myasthenia gravis caused him body weakness, the ALJ found that the medical evidence of record did not document that "on a regular and consistent basis." AR 25. The ALJ also summarized medical evidence indicating that Plaintiff's physical examinations were generally normal. AR 25-28, citing, *e.g.*, AR 298-300 (normal range of motion; "Gait is normal, including tandem walk"), 311-12 (normal strength), 308, 321 (normal range of motion; normal strength); 402, 429-35, 444, 452 (normal range of motion, normal strength), 456 (same), 459, 486-92, 511, 519 (noting only musculoskeletal weakness and double vision; "minimal symptoms persist double vision"), 530-33 (normal strength, normal range of motion), 536 (same). The ALJ also determined that there was little record support for lifting limited to 10 pounds, AR 28, and that

11

1  Plaintiff was able to perform his activities of daily living independently. AR 29, citing 543 (June
2  2019: "Independent with all ADLs."). Thus, it reasonable to infer from the decision the basis for
3  the ALJ's determination that the opined exertional limitations were inconsistent with the overall
4  evidence.

5  Additionally, with regard to consistency, the ALJ observed that while Plaintiff complained
6  to Dr. Fabella that treatment for his myasthenia gravis was not working, the overall evidence from
7  treating providers showed that it was working and his condition stabilized. AR 30. Plaintiff
8  argues that the ALJ does not explain how stabilization would undermine Dr. Fabella's opinion.
9  (Doc. 20 at 12.) However, the ALJ's decision repeatedly includes record evidence confirming
10 that Plaintiff's myasthenia gravis responded well to treatment, not just that his condition
11 stabilized. AR 27, citing AR 429 ("He reports improvement in his symptoms after he takes
12 Mestinon."), 444 ("Improving."), 536 (same); 524 ("well controlled on the above regimen"), 517
13 ("improve on symptoms"); AR 28, citing 519 ("stable on medications;" "minimal symptoms
14 persist double vision").

15 Further, despite noting stabilization, the ALJ was nonetheless "persuaded that the claimant
16 has vision problems that must be addressed in the residual functional capacity." AR 30. To that
17 end, the ALJ considered Dr. Fabella's opinion that Plaintiff "should avoid working at heights,
18 walking on uneven terrains or climbing ladders." *Id.* The ALJ agreed with these portions of Dr.
19 Fabella's opinion and reiterated he was "persuaded," adopting a "restriction from climbing
20 ladders, ropes, or scaffolds and that [Plaintiff] should avoid work hazards." *Id.*

21  Dr. Royter

22 On June 5, 2019, Dr. Royter completed a Physical Residual Function Capacity Medical
23 Source Statement form. AR 477-80. Dr. Royter identified Plaintiff's diagnosis as myasthenia
24 gravis, with symptoms of weakness and fatigue. Dr. Royter indicated that the most significant
25 clinical finding was weakness. He opined that Plaintiff could lift and carry 20 pounds or more
26 occasionally and less than 5 pounds frequently. AR 477-78. He also opined that Plaintiff could
27 walk one block or more without rest or severe pain and on rough or uneven ground. He could not
28 climb steps without the use of a handrail at a reasonable pace. He did not have problems with

balance when ambulating, but did have problems with stooping, crouching, and bending. AR 478. Dr. Royter further opined that Plaintiff would need to lie down for 15 minutes due to fatigue and weakness. Plaintiff could sit about 1 hour in an 8-hour day and stand and walk less than 1 hour in an 8-hour day. AR 478. He also would require unscheduled breaks every 30-40 minutes for 15 minutes. Plaintiff also would need an assistive device while engaging in occasional standing and walking on all surfaces and with prolonged ambulation. AR 479. Dr. Royter also indicated that Plaintiff could use his right hand, fingers, and arm for 40% of the time during an 8-hour workday and his left hand, fingers, and arm for 60% of the workday. Plaintiff could not push and pull arm or leg controls from a sitting position for six or more hours per 8-hour workday. He could not climb stairs, ladders, scaffolds, ropes, or ramps. AR 479. Plaintiff's pain would interfere with attention and concentration occasionally and his stress would interfere with attention and concentration occasionally. AR 479. Plaintiff would be "off task" for 30% of an 8-hour workday and, on average, would be absent from work 4 days per month, and would b unable to complete an 8-hour workday 5 days or more per month. Dr. Royter believed that Plaintiff was unable to obtain and retain work in a competitive work environment due to weakness and fatigability. AR 480.

Plaintiff argues that the ALJ failed to properly weigh Dr. Royter's treating physician opinion. However, under the new regulations, the ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Plaintiff's argument therefore fails.

Here, the ALJ considered Dr. Royter's opinion and found it "not persuasive." AR 32. In so doing, the ALJ evaluated the opinion's persuasiveness based on the relevant factors of supportability and consistency. *Id.* Addressing supportability, the ALJ indicated that Dr. Royter "provided only the slightest explanation for his extreme limitations and his opinion is not supported within the statement itself." AR 32. According to the record, Dr. Royter completed a check-the-box form, cited only symptoms of weakness and fatigue, and identified weakness as the only clinical findings and objective signs. AR 477-80. Dr. Royter provided no explanation regarding the opined limitations. The ALJ further noted that Dr. Royter's opinion was not

13

1  consistent with his own treatment notes that show the claimant responded well to treatment
2  without side effects. AR 32.

3  Addressing consistency, the ALJ indicated that Dr. Royter's opinion regarding lifting and
4  carrying 20 pounds or more occasionally was "more consistent with the evidence," but was still
5  inconsistent. AR 32. The ALJ also indicated that "[t]he extreme limitations he opined are simply
6  not consistent with the overall evidence." AR 32. As discussed above in connection with Dr.
7  Fabella's opinion, the ALJ also summarized medical evidence indicating that Plaintiff's physical
8  examinations were generally normal. AR 26-28.

9  Additionally, the ALJ noted Dr. Royter's opinion that Plaintiff would be unable to work
10 on a competitive basis intruded "into an issue reserved to the Commissioner," and was inherently
11 neither valuable nor persuasive. AR 32. As the ALJ correctly noted, a statement about Plaintiff's
12 ability to work is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i);
13 *Layfield v. Comm'r of Soc. Sec.*, No. 2:23-cv-02540-CSK, 2025 WL 894944, at *5 (E.D. Cal.
14 Mar. 24, 2025) ("As the ALJ correctly noted, a statement about Plaintiff's ability to work is an
15 issue reserved to the Commissioner.").

16 **C. Subjective Testimony**

17 Plaintiff argues that the ALJ failed to include work-related limitations in the RFC
18 consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and
19 convincing reasons for rejecting Plaintiff's subjective complaints. (Doc. 20 at 13.)

20 In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a
21 two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of*
22 *Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective
23 medical evidence of his impairment that could reasonably be expected to produce some degree of
24 the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step
25 and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding
26 the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.
27 *Id.* at 1015.

28 Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

14

be expected to cause the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 25. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ offered specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ considered whether Plaintiff's subjective complaints were consistent with the medical evidence. AR 25. While a lack of objective medical evidence cannot form the sole basis for discounting testimony, inconsistency with the medical evidence or medical opinions can be sufficient. *See Woods v. Comm'r of Soc. Sec.*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (citing *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008)); 20 C.F.R. 404.1529(c)(2) (consideration of objective medical evidence, including laboratory diagnostic techniques); SSR 16-3p, 2017 WL 5180304, at *5 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *accord Dittmer v. Comm'r of Soc. Sec.*, No. 1:22-cv-01378-SAB, 2024 WL 967439, at *9 (E.D. Cal. Mar. 6, 2024) ("Ninth Circuit caselaw has distinguished testimony that is 'uncorroborated' by the medical evidence from testimony that is 'contradicted' by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard."). As one example of inconsistency, the ALJ noted that although Plaintiff asserted that myasthenia gravis caused him body weakness, the medical evidence of record did not document this on a regular and consistent basis. AR 25. For example, the ALJ noted that Plaintiff denied any weakness in June 2017 (AR 26, citing AR 298), he was negative for constitutional or other symptoms during an October 2017 appointment (AR 26, citing AR 454), he denied neurologic symptoms, such as weakness, during Dr. Fabella's examination (AR 26, citing AR 422-23), and he reported no symptoms other than occasional droopy eyelids and blurred vision in November 2017 (AR 27, citing AR 429). The

ALJ also noted that Plaintiff reported no complaints in April 2018 (AR 27, AR 534, 536), and denied any weakness or fatigue in September 2018 (AR 28, citing AR 509-12). As another example, the ALJ indicated that the treatment records provided little to no support for Plaintiff's assertion of lifting limited to 10 pounds only or napping to the degree reported. AR 28.

Second, the ALJ considered that Plaintiff's treatment history demonstrated "only conservative and successful treatment." AR 28. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). As previously discussed, Plaintiff's myasthenia gravis was treated with medications, which improved and stabilized his condition.

Third, the ALJ considered Plaintiff's activities of daily living. AR 29. A claimant's level of activity may be sufficient to support an ALJ's determination to give less weight to his subjective statements. *See*, *e.g.*, *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). For example, the Ninth Circuit determined the ability to cook, clean, do laundry and manage finances may be sufficient to reject a claimant's complaints. *See Stubbs-Danielson*, 539 F.3d at 1175. An ALJ may also conclude "the severity of ... limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine*, 574 F.3d at 693. Similarly, a claimant's ability to care for personal needs, "prepare easy meals, do light housework, and shop for some groceries," may be viewed as "inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). Here the ALJ observed that Plaintiff admitted he was able to perform his activities of daily independently. AR 29, citing 13F (AR 545 ["Independent with all ADLs."]).

Plaintiff argues that the ALJ did not sufficiently consider the extent of Plaintiff's activities. However, "[e]ven where [a plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.

16

2012); *see also Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was").

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle*, 533 F.3d at 1161-63 (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*, 674 F.3d at 1115 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND RECOMMENDATON**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment (Doc. 20) be denied.
2. The Commissioner's request to affirm the agency's decision be granted.
3. The Clerk of the Court be directed to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff Jose De Jesus Bautista Velasco.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the

1 | specified time may result in the waiver of the "right to challenge the magistrate's factual
2 | findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter
3 | v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 21, 2025**                    /s/ Barbara A. McAuliffe            _
                                              UNITED STATES MAGISTRATE JUDGE